UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

HOWARD ACKERMAN,

                Plaintiff,

vs.

STATE OF NEVADA DEPARTMENT OF CORRECTIONS, *et al.,*

                Defendants.

Case No. 2:11-cv-00883-GMN-PAL

**ORDER**

(Mot for Order to Show Cause - Dkt. #40)
(Motion to Strike Expert - Dkt. #52)

    Before the court is Defendants' Motion for an Order to Show Cause (Dkt. #40), and Plaintiff's Motion to Strike Defendants' Expert Gary Friedman (Dkt. #52), which were referred to the undersigned by the District Judge. The court has considered the motions, responses and reply.

## BACKGROUND

**I.    The Complaint**

    The Complaint (Dkt. #1) in this case was filed June 1, 2011. An Emergency Motion for a Temporary Restraining Order ("TRO") (Dkt. #4) and a Motion to Certify a Class (Dkt. #5) were also filed June 1, 2011. On June 2, 2011, the district judge set the Emergency Motion for TRO for hearing June 10, 2011. *See* Minute Order (Dkt. #7). The Complaint and Motion for TRO seek injunctive relief prohibiting the Nevada Department of Prisons from implementing a policy change stopping the service of kosher meals to Jewish prisoners and prisoners of other religious faiths whose religion require them to keep kosher. Complaint at ¶ 1. The named Plaintiff, Howard Ackerman, is an orthodox Jewish prisoner who is required to keep kosher as an essential tenet of his religion. *Id.* at ¶ 2. He alleges the Department of Corrections' actions violate his rights and the rights of putative class members under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). *Id.*

## II.     Procedural History

In an Order (Dkt. #19) entered July 22, 2011, the district judge denied Plaintiff's Motion to Certify a Class and Plaintiff's Motion for TRO without prejudice and stayed this case until the status conference scheduled for December 15, 2011.  The Order found that Plaintiff filed this lawsuit prematurely because the Nevada Department of Corrections had not yet decided to implement a non-kosher meal plan, although it may need to overhaul some aspects of its meal system due to budget constraints.  The order found Plaintiff failed to carry his burden of demonstrating entitlement to a TRO and failed to make a clear showing that he is being deprived of kosher foods.  Because the Defendants agreed to provide Plaintiff with at least thirty days notice of any change to the availability of kosher meals at the Nevada Department of Corrections, the court granted Defendants' motion to stay proceedings in this case until the status conference, indicating the court would re-evaluate the stay at that time.  At the status conference, held on January 3, 2012, the court lifted the stay, allowed Plaintiff to file an Amended Complaint, and ordered Defendants to provide Plaintiff with notice thirty days prior to implementing the common fare menu.  *See* Minute Order (Dkt. #30).

On January 19, 2012, Plaintiff filed a Motion for Reconsideration (Dkt. #31), requesting the district judge reconsider her rulings on, among other things, the Motion for Class Certification, and the Emergency Motion for Preliminary Injunction because defense counsel advised Plaintiff the common fare menu would be implemented on or about February 27, 2012.  On February 10, 2012, the district judge held a hearing on a number of pending motions.  She granted the Motion to Reconsider the Emergency Motion for Preliminary Injunction (Dkt. #31) as to Plaintiff alone and set a hearing on Plaintiff's Motion to Reconsider Class Certification (Dkt. #31) for April 18, 2012.  Additionally, she directed Defendants to submit a form letter, prepared by the court, to inmates currently receiving a kosher meal, directing the inmates to choose whether they wanted to continue receiving kosher meals or receive the new common fare menu.  *See* Minute Order (Dkt. #63).  On February 17, 2012, after Defendants submitted the inmates' letters, the district judge granted the Motion for Preliminary Injunction as to Plaintiff and all inmates who elected to continue to receive their current kosher meals.  *See* Minute Order (Dkt. #72).

On March 12, 2012, the district judge entered an Order (Dkt. #91) denying Defendants' Motion

2

for Stay of Injunctions or, in the Alternative, Motion to Require that Plaintiff Give Security (Dkt. #83). On the same day, she also entered an Order (Dkt. #92) denying Plaintiff's Motion to Expedite Decision on Motion for Class Certification (Dkt. #86), and Plaintiff's Motion to Shorten Time (Dkt. #87). Defendants filed a Notice of Appeal (Dkt. #94) on March 12, 2012, appealing three of the district judge's interlocutory Orders (Dkt. ##64, 72 & 91) to the Ninth Circuit Court of Appeals. Counsel for the parties submitted a stipulation and proposed order certifying class action, to stay the proceedings and to direct class notification procedures pursuant to Fed.R.Civ.P. 23(c)(2)(A) (Dkt. #107) on March 23, 2012. The district judge has not yet approved or denied the parties' stipulation.

## DISCUSSION

### I.      Defendants' Motion for an Order to Show Cause (Dkt. #40).

Defendants seek an order to show cause why the Aleph Institute, whom Defendants characterize as "Plaintiff's counsel's sponsoring organization" should not be ordered to refrain from further contacting or interfering with Defendants' expert consultant, Gary Friedman. The motion, which is supported by the Declaration of Gary Friedman, asserts that the Aleph Institute has retained or "otherwise provided" attorney Jacob Hafter to represent the Plaintiff in this case. Gary Friedman has served as a consultant on matters pertaining to the formulation of the common fare menu at issue in this case. Mr. Friedman spoke with Rabbi Mendy Katz of the Aleph Institute at the beginning of his consulting work for the Nevada Department of Corrections ("NDOC"). According to Friedman, Rabbi Katz questioned Friedman's involvement in this case and attempted to dissuade Friedman from serving as a consultant. However, Mr. Friedman advised Rabbi Katz that he would continue to provide expert consultant services in this matter. Mr. Friedman spoke directly with Mr. Hafter after Plaintiff Ackerman was transferred from the Northern Nevada Correctional Center ("NNCC") to Lovelock Correctional Center ("LCC"), and assured Mr. Hafter that Friedman was trying to provide a benefit to Jewish inmates confined in NDOC. Mr. Friedman understood that Mr. Hafter offered not to file anything further with the court in this case until after Mr. Friedman completed his planned tour of NDOC culinary facilities. However, Mr. Hafter filed certain motions July 8, 2011, contrary to his representations. As a result, Mr. Friedman has had no further contact with Mr. Hafter.

Mr. Friedman avers that on January 20, 2012, he received an e-mail from Rabbi Katz asking that

1  Friedman call him.  Mr. Friedman telephoned Rabbi Katz as requested and was informed that Rabbi
2  Katz wanted to discuss the "Nevada situation".  Mr. Friedman avers he advised Rabbi Katz that he
3  would not discuss this litigation because he did not want Rabbi Katz "passing anything onto his
4  attorney in this matter that might be twisted and/or lied about."  Friedman attests that Rabbi Katz
5  angrily told him that Katz would "stoop to any level" to stop Friedman, that Friedman would be the
6  cause of 20 Jewish inmates not eating kosher, and that no rabbinic authority would support Friedman.
7  Friedman took these statements by Rabbi Katz to indicate that the Rabbi did not want Friedman
8  working on this matter.  Friedman found the remarks intimidating believes they were aimed to deter
9  him from offering consulting services in this case.

10  Defendants argue that federal courts have inherent powers to manage their own proceedings and
11  control the conduct of persons appearing before them.  Defendants contend that a reasonable person
12  would construe Rabbi Katz's three statements to Mr. Friedman as a form of witness tampering aimed at
13  dissuading Friedman from serving as an expert consultant in this case.  Defendants also assert that they
14  have established a sufficient connection between Rabbi Katz, the Aleph Institute, and Plaintiff's
15  counsel to warrant an inquiry by the court into whether Plaintiff and Plaintiff's counsel, or the Aleph
16  Institute is encouraging improper witness intimidation and tampering.  Defense counsel suggests that
17  the court should deem Rabbi Katz and the Aleph organization as an interested party or agent of the
18  Plaintiff over whom the court has jurisdiction to make such inquiries and control their conduct.
19  Defendants ask the court to issue an order to show cause why the Aleph Institute should not be ordered
20  to refrain from contacting or interfering with Gary Friedman's involvement in this litigation, and that
21  the court "fashion any other additional appropriate relief to insure a fair trial in this case."

22  Plaintiff opposes the motion arguing Defendants filed it after hours on the eve of the February 2,
23  2012, status conference set by the district judge, without contacting opposing counsel before filing the
24  motion.  If anything, Defendants should be sanctioned for filing a frivolous motion.  The opposition
25  consists of a lengthy explanation of what the Aleph Institute is and what it does.  Counsel for Plaintiff
26  opines that prisons tend to de-humanize inmates and destroy the family unit as well as any sense of self
27  worth.  Plaintiff states that "Aleph's goal is not to free the inmate from prison physically, but to free
28  him or her spiritually."  After providing this background and commentary, counsel for Plaintiff

1  represents that Aleph has not paid for any of this litigation, and is not a client of Plaintiff's counsel's
2  law firm.  Rather, Mr. Hafter has taken this case on a pro bono basis, and will seek an award of fees
3  under 42 U.S.C. § 1988, or in the form of any sanctions the court might impose against the Defendants.
4  Mr. Hafter represents that he has not relied on Rabbi Katz to serve as an expert in this case, although he
5  did file an affidavit received from Rabbi Katz in support of a temporary restraining order.  Although
6  Rabbi Katz's affidavit was provided to support Plaintiff's temporary restraining order, Mr. Hafter states
7  "Rabbi Katz's affidavit was not intended to provide expert testimony to this Court."
8       On the merits, counsel for Plaintiff argues that even if the Aleph Institute or Rabbi Katz were
9  involved in this case, neither the Institute nor Rabbi Katz have acted in a manner that warrants
10 sanctions.  Counsel for Plaintiff called Rabbi Katz to respond to Defendants' motion for an order to
11 show cause.  Rabbi Katz acknowledged that he had a telephone conversation with Mr. Friedman which
12 was not a friendly call.  However, Rabbi Katz denies threatening Mr. Friedman, although he admitted
13 telling Friedman that the Plaintiff in this case would vehemently fight against the implementation of the
14 common fare menu.  No one else from Aleph has contacted Mr. Friedman except for this one phone
15 call.  Although Rabbi Katz and Aleph are not parties to this case, Rabbi Katz offered to make himself
16 available to this court for direct questioning or to provide an affidavit to respond to Defendants'
17 allegations in the motion for an order to show cause.
18      Counsel for Plaintiff has suggested to Rabbi Katz that neither he nor anyone at Aleph should
19 contact Mr. Friedman in the future.  On February 1, 2012, Mr. Hafter represents that he was assured that
20 neither Rabbi Katz nor anyone from Aleph will contact Mr. Friedman in the future with respect to his
21 involvement with the State of Nevada and this case.
22      Plaintiff also makes several arguments about whether Mr. Friedman should be recognized as an
23 expert for any purpose in this case which will be addressed in the Motion to Strike (Dkt. #52) discussed
24 below.
25      It is apparent that the January 20, 2012, telephone conversation between Mr. Friedman and
26 Rabbi Katz was unpleasant.  However, the court finds the Defendants have not met their burden of
27 showing that an order to show cause should issue against a non-party, the Aleph Institute, or Rabbi
28 Katz.  Of the 29 paragraph declaration of Gary Friedman submitted with the motion, only paragraphs

19-23 and 28 of the declaration address the history and circumstances of the January 20, 2012, telephone call between the two. Mr. Friedman received an e-mail from Rabbi Katz January 20, 2012, asking Friedman to call him. Friedman Declaration, ¶19. Friedman telephoned Rabbi Katz. *Id*., ¶20. Rabbi Katz stated he wanted to discuss the "Nevada situation". *Id*. Friedman told Rabbi Katz "he declined to discuss such matters with him stating words to the effect that I didn't want him passing anything onto his attorney in this matter that might be twisted and/or lied about." *Id*., ¶21. Rabbi Katz angrily responded that: (a) he would "stoop to any level" to stop Friedman; (b) Friedman would be the cause of 20 Jewish inmate to stop eating kosher; and (c) no rabbinic authority would support Friedman. Friedman took these statements "to be a form of intimidation aimed to deter me from further offering my consultancy in the CFM and this matter." *Id*., ¶28.

Mr. Friedman called Rabbi Katz. By his own account, he told Rabbi Katz that he would not discuss this case because he did not want Rabbi Katz passing anything onto his attorney that might be twisted or lied about. Being accused of twisting words and lying generally makes one angry. It made Rabbi Katz angry. Words were exchanged. Nothing in the record supports finding that the heated exchange constitutes witness tampering or intimidation. The motion is denied.

**II.     Plaintiff's Motion to Strike (Dkt. #52)**.

Plaintiff seeks an order "striking" Defendants' expert, Gary Friedman. Defendants filed documents (Dkt. ##40, 47) with the court alleging that Gary Friedman is an expert who opines that the common fare menu is kosher. Counsel for Plaintiff concedes Mr. Friedman has substantial experience in chaplaincy and inspection of kosher facilities. However, Plaintiff argues Friedman is not qualified to provide an expert opinion that the common fare menu is kosher. Plaintiff asks the court to exclude his testimony by applying Federal Rule of Evidence 702, and by exercising the court's gatekeeping functions as required by the United States Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993*),* and *Kumho Tire Co., Ltd. v Carmichael,* 426 U.S. 137 (1999). Plaintiff argues that by applying these principles the court must conclude that Mr. Friedman is not qualified to serve as an expert in this case for several reasons.

First, counsel for Plaintiff contends "it is evident that this case will turn on technical distinctions of Jewish law of kashrus–primarily, whether rabbinic supervision is required for mass-produced food in

prisons to be certified as kosher." Counsel for Plaintiff maintains that only an ordained Rabbi may provide an expert opinion on Jewish law and whether the common fare menu is kosher. Mr. Friedman is not a Rabbi, does not hold a voting position in any kosher certification agency, and does not sit on any courts of Jewish law. Therefore, he is an "independent actor" who is not experienced, educated or qualified to provide opinions on Jewish law, and his testimony should be stricken. Additionally, counsel for Plaintiff argues Mr. Friedman has misstated his qualifications to the court by relying on a December 10, 2010 letter from the Va'ad HaRabanim of Greater Seattle ("Seattle Va'ad"). Counsel for Plaintiff obtained a letter from the Seattle Va'ad indicating that Mr. Friedman has no authority to engage in the independent certification of kashrus on its behalf. Additionally, the Seattle Va'ad has not reviewed the common fare menu involved in this case and has not made any determination that the menu is kosher.

Finally, counsel for Plaintiff argues that Mr. Friedman should be stricken as an expert because Defendants did not disclose him as an expert pursuant to the requirements of Federal Rule of Civil Procedure 26. Additionally, Defendants have not served Plaintiff's counsel with an expert report that complies with the requirements of Rule 26(a)(2)(B).

Defendants oppose the motion pointing out that on February 10, 2012, the district judge denied in part Ackerman's motion to strike the Friedman declaration attached as an exhibit to Dkt. #47, but referred the portion of the motion requesting that the declaration attached to Dkt. #40 be referred to the undersigned. As set forth above, the declaration was submitted in support of Defendants' motion for an order to show cause which the court has now denied. Defendants argue that the Friedman declaration establishes facts concerning Friedman's communication with Rabbi Katz and Plaintiff's attorney. It also includes expert opinions, i.e. conclusion predicated on his specialized knowledge and expertise. Defendants argue Friedman is a qualified expert because he has specialized knowledge, education and experience to opine on Jewish dietary law in a prison setting. As such, his opinions are admissible under Fed.R.Evid. 702 and is up to the fact finder to determine the weight his testimony deserves. Defendants argue it is not even material to the order to show cause motion whether Gary Friedman actually becomes qualified at trial to testify as an expert because his declaration was offered in support of the motion for an order to show cause.

Having reviewed and considered the moving and responsive papers, the court will deny the motion to strike the Friedman declaration attached to the order to show cause. The court has not entered a discovery plan and scheduling order, and therefore, no deadline has been set for the parties to disclose experts and provide expert reports. The declaration was offered solely to support the Defendant's motion for and order to show cause which the court has denied. Only a few paragraphs of the declaration were directly pertinent to claims raised in the motion for an order to show cause. The majority of the declaration consisted of background information to give context to the dispute. If and when a Discovery Plan and Scheduling Order is entered deadlines will be established for designating experts and serving reports. If Mr Friedman is designated as an expert Defendants will be required to submit a Rule 26(a)(2)(B) compliant report. Given the procedural posture of this case and the purpose for which the declaration was offered, any other challenges to his opinion testimony are premature.

For the reasons stated,

**IT IS ORDERED** that:

1. Defendants' Motion for an Order to Show Cause (Dkt. #40) is **DENIED**.
2. Plaintiff's Motion to Strike Defendants' Expert Gary Friedman (Dkt. #52) is **DENIED**.

Dated this 20th day of April, 2012.

_____
Peggy A. Leen
United States Magistrate Judge