**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HOWARD ACKERMAN, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> STATE OF NEVADA DEPARTMENT OF ) <br> CORRECTIONS; BRIAN SANDOVAL, in his ) <br> official and individual capacity; ROSS MILLER, in ) <br> his official and individual capacity; CATHERINE ) <br> CORTEZ-MASTO, in her official and individual ) <br> capacity; and JAMES COX, in his official and ) <br> individual capacity, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: 2:11-CV-00883-GMN-PAL <br><br> **ORDER** |

Pending before the Court is the proposed class action settlement agreement (*See* Ex. 1 to Order, Aug. 16, 2012, ECF No. 144) jointly submitted by class counsel and Defendants State of Nevada Department of Corrections ("NDOC" or "the State"), Brian Sandoval, Ross Miller, Catherine Cortez-Masto, and James Cox (collectively, "Defendants").  Class counsel submitted a Response to Objections to Proposed Settlement (ECF No. 190), and Defendants submitted a Response to Objections with a Motion to Approve Class Action Settlement (ECF No. 195).

I.      **BACKGROUND**

Plaintiff Howard Ackerman filed his original Complaint (ECF No. 1) on June 1, 2011, alleging one cause of action on behalf of a class for violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  Pursuant to the parties' request, the action was stayed in July 2011. (Order, July 22, 2011, ECF No. 19.)  The stay was lifted and Plaintiff filed an Amended Complaint (ECF No. 29) on January 3, 2012, alleging two causes of action: (1) violations of the First Amendment

and RLUIPA, 42 U.S.C. § 2000cc-1 on behalf of a class; and (2) Retaliation on behalf of himself, in his individual capacity.

On February 10, 2012, the Court granted Plaintiff's Motion for Preliminary Injunction (ECF No. 31) as to Plaintiff only. (Mins. of Proceedings, ECF No. 63; Order, Feb. 10, 2012, ECF No. 64.)  On February 17, 2012, the Court amended the injunction to include inmates who elected to continue to receive their current kosher meals as identified in an Exhibit filed under seal. (Min. Order, Feb. 17, 2012, ECF Nos. 72, 73.)

On March 23, 2012, the parties submitted a Stipulation and Proposed Order Certifying Class (ECF No. 107) and the Court signed it on May 2, 2012 (ECF No. 114).  Pursuant to the Court's Order, the stipulated Class was defined pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure as:

> All prisoners confined with Nevada Department of Corrections facilities:
> (i) Who have been identified to the Department of Corrections through various procedures by Plaintiff (i.e., consultation with independent clergy, declaration of faith responses, observed historical observances) as a practicing Orthodox Jew and are currently receiving the current kosher diet;
> (ii) Those individuals who have submitted an affidavit of inclusion in the Class to Counsel for Plaintiff, Law Office of Jacob Hafter & Associates, on or before March 20, 2012, whose religious beliefs command the consumption of a kosher diet, a kosher diet is sincerely rooted in their system of religious beliefs, and for whom the denial of a kosher meal would constitute a substantial burden on the exercise of their sincerely-held religious beliefs; and
> (iii) Those individuals who are currently receiving a kosher diet pursuant to the United States District Court Order dated February 17, 2012 [#72], whose religious beliefs command the consumption of a kosher diet, a  kosher diet is sincerely rooted in their system of religious beliefs, and for whom the denial of a kosher meal would constitute a substantial burden on the exercise of their sincerely-held religious beliefs, provided such individuals follow an opt-in procedure set by this Court, as more fully described herein;

(Order, May 2, 2012, 2:11-24, ECF No. 114.)  The parties stipulated that Plaintiff's counsel, the

1   Law Office of Jacob Hafter & Associates would be appointed as Class Counsel. (*Id*. at 3:22-

2   23.)  Plaintiff's second cause of action for retaliation was not mentioned as part of the

3   definition of the class.

4        In July 2012, in the parties' original joint motion before the Court, the proposed

5   settlement was submitted as an Exhibit (Proposed Settlement, Ex. A to Joint Mot., ECF No.

6   137-1), and the motion requested:

7        (1)  Court approval of the form and manner of class notice;

8        (2)  that a deadline be set for class objections to be filed;

9        (3)  that a date be set for a fairness hearing; and

10       (4)  that a deadline be set for party reports to be filed with the Court.

11  (Joint Mot., ECF No. 137.)  At the July 31, 2012 hearing on the original motion, the Court

12  directed the parties to amend the proposed Notice and re-submit it to the Court. (Mins., ECF

13  No. 139.)  The motion was then denied without prejudice by written order. (Order, August 8,

14  2012, ECF No. 141.)  On August 9, 2012, the parties filed a motion to amend (ECF No. 142),

15  and on August 13, 2012, the parties submitted an amended proposed notice as an exhibit to the

16  motion (ECF No. 143), which the Court approved (*see* Order, Aug. 16, 2012, ECF No. 144.)

17       Since the Court's Order of August 16, 2012 (ECF No. 144), and before the hearing held

18  October 11, 2012 (ECF No. 206), forty-five documents were filed by inmates or interested

19  parties (ECF Nos. 147-152, 154-180, 182, 184-185, 189, 191-192, 198-201, 204-205), of which

20  thirty-five were formal objections to the proposed settlement or requests to opt-out (ECF Nos.

21  147-152, 154-164, 168-180, 182, 184-185, 191, 200) and eight were letters (ECF Nos. 165-166,

22  189, 192, 198-199, 201, 204).[1]  Within the thirty-five formal objections, forty-six inmates were

23  represented – some objections were signed by multiple inmates, but not all were named as part

24

25

[1] The two remaining documents were styled as an "Affidavit" (ECF No. 167) filed by inmate William Fodor, and a "Motion" filed by lead Plaintiff Howard Ackerman (ECF No. 205).

1   of the class, which numbered around two hundred and five class members.  More than twenty

2   percent of the class formally objected to the proposed settlement.

3          Generally, the categories of objections to the proposed settlement were: (1) that the

4   common fare menu was not equal to the regular menu, raising equal protection claims; (2) that

5   the Department of Corrections would not provide kosher food, including for holiday feasts;

6   (3) that the nutritional standards, especially for medical and special needs diets, were not met;

7   (4) that the breadth of the release of all claims was too broad; (5) that class counsel was not

8   competent; and (6) that a fear of retaliation was justified.  The Court received no letters in

9   support of the proposed settlement.  Lead Plaintiff, Howard Ackerman, was included among

10  those who objected to the proposed settlement.

11  **II.     LEGAL STANDARD**

12          **A.    Class Actions**

13          Rule 23(e) of the Federal Rules of Civil Procedure requires that "claims, issues, or

14  defenses of a certified class may be settled, voluntarily dismissed, or compromised only with

15  the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of this subsection is the

16  protection of those class members, including the named plaintiffs, whose rights may not have

17  been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of*

18  *San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

19          Furthermore, "[t]he court must direct notice in a reasonable manner to all class members

20  who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Any class member may object

21  to any proposal requiring court approval under this rule, and the objection may be withdrawn

22  only with the court's approval. Fed. R. Civ. P. 23(e)(5).

23          "If the proposal would bind class members, the court may approve it only after a hearing

24  and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "It is the

25  settlement taken as a whole, rather than the individual component parts, that must be examined

1  for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The

2  Court does not "have the ability to 'delete, modify or substitute certain provisions.'" *Id*.

3  (quoting *Officers for Justice*, 688 F.2d at 630).  "The settlement must stand or fall in its

4  entirety." *Id*.

5      In *Hanlon*, the Ninth Circuit provided the following guidance, including eight non-

6  exhaustive factors to consider:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*.

13  Finally "[a]n order that grants or denies class certification may be altered or amended

14  before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  A "threshold task" is to determine whether

15  the class satisfies the requirements of Rule 23(a), "namely: (1) numerosity, (2) commonality,

16  (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019.  This last

17  requirement, that "the representative parties will fairly and adequately protect the interests of

18  the class," is resolved by answering two questions: "(1) do the named plaintiffs and their

19  counsel have any conflicts of interest with other class members and (2) will the named

20  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*. at 1020.

21  **B.  Preliminary Injunctions**

22  A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of

23  success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief;

24  (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public

25  interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is]

1    an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

2    entitled to such relief." *Id*. at 22.  The Ninth Circuit has held that "'serious questions going to

3    the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of

4    an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the*

5    *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

6           The Prison Litigation Reform Act ("PLRA") provides that a court may enter a

7    preliminary injunction in a civil action with respect to prison conditions, but limits the standard

8    as follows:

9           Preliminary injunctive relief must be narrowly drawn, extend no further
            than necessary to correct the harm the court finds requires preliminary
10          relief, and be the least intrusive means necessary to correct that harm. The
            court shall give substantial weight to any adverse impact on public safety or
11          the operation of a criminal justice system caused by the preliminary relief
12          and shall respect the principles of comity set out in paragraph (1)(B) in
            tailoring any preliminary relief.
13
14   18 U.S.C. § 3626(a)(2).

15   **III.    DISCUSSION**

16          Here, as discussed below, the Court cannot find that the proposed settlement is fair,

17   reasonable, and adequate.  Furthermore, the Court finds that certification of the class is no

18   longer justified, and will decertify the class.  Finally, the Court finds that grounds for an

19   injunction no longer exist, and will dissolve the injunction.

20          The Court has considered the following *Hanlon* factors in determining that, as a whole,

21   the evidence before the court weighs against approval of the proposed settlement:

22          1.  the strength of the plaintiffs' case is not strong, though it is untested;

23          2.  the risk, expense, complexity, and likely duration of further litigation is difficult to

24   determine, but potentially extensive;

25          3.  the risk of maintaining class action status throughout the trial is high;

1    4.  the amount offered in settlement is zero, and in the form of injunctive relief;

2    5.  the extent of discovery completed and the stage of the proceedings is minimal;

3    6.  the experience and views of counsel is neutral to weak;

4    7.  the presence of a governmental participant is a neutral factor here;

5    8.  the reaction of the class members to the proposed settlement is uniformly and

6  strenuously negative from those who have registered an opinion with the Court, including the

7  lead Plaintiff and over twenty percent of the class.

8         Although Defendants' offer of settlement may be a better result than that ultimately

9  obtained after a full determination on the merits, the Court cannot find that the proposed

10  settlement is fair, reasonable, and adequate, when weighing all the factors.

11         As discussed below, the Court finds that the strength of the case is not strong.  Although

12  the settlement offer is solely injunctive, it is not clear that other relief is merited, and further

13  litigation may result in a less favorable outcome, particularly where the costs and risks of

14  maintaining the action and class action status are potentially high.  Balancing these factors is

15  the fact that there has been no evaluation of the merits at this stage of the litigation, and

16  minimal discovery has been conducted, making any estimation of success more difficult.

17         Weighing most heavily against approval of the proposed settlement are the strenuous

18  objections from members of the class and from the lead plaintiff, both to the settlement terms

19  and to the conflicts of interest and adequacy of legal representation of class counsel.  The Court

20  finds that the objections and questions raised by the class are more clearly apparent and

21  outweigh the nebulous potential risks of rejecting Defendants' proposed settlement.  In the face

22  of demonstrated growing hostilities between class members, lead Plaintiff, and class counsel as

23  shown in the docket and at the hearings, the Court cannot be confident that class members'

24  interests have been fairly represented or that their concerns regarding the terms of the

25  settlement have been adequately addressed.  This deficiency is more severe where, as here, no

1    dispositive motions have been heard, there has been no determination of the merits of the claim,

2    and there has been no opportunity for meaningful discovery.

3          The Court cannot find that the experience and views of class counsel weighs in favor of

4    the proposed settlement because it has not been demonstrated that class counsel has ever served

5    as class counsel in a class action or represented inmate plaintiffs with similar claims.  Where

6    the sole voice in favor of the settlement is class counsel, over the vocal objections of class

7    members, a court might reasonably rely on the representations of class counsel where there is

8    extensive experience with the class claim or with class action litigation.  However, here there is

9    none.  Here, class counsel has frequently articulated difficulties in managing the litigation and

10   one condition of the proposed settlement is the recovery of costs.  Also, the Court finds that the

11   concerns articulated by the class and the lead Plaintiff were not satisfactorily addressed by the

12   parties in their oral argument or briefs, and oblique references to the involvement and influence

13   of outside parties to the action are not sufficient to dispel these concerns.  With these factors

14   weighed together, therefore, the Court does not have sufficient basis to find that the proposed

15   settlement is fair, reasonable, and adequate.

16         Also, and as discussed below, the Court finds that certification of the class as currently

17   defined is no longer clearly supported by the record, particularly with regard to adequacy of

18   representation and possibly the elements of commonality and typicality as well.  The adequacy

19   inquiry for Rule 23 is separate from the adequacy inquiry of a proposed settlement, discussed

20   above.  However, the Court finds that the facts discussed in this order also require a re-

21   evaluation of the Rule 23 adequacy, commonality, and typicality threshold requirements for

22   maintenance of a class action, and that those prerequisites are no longer satisfied.  The Court

23   will decertify the class and will give leave for a renewed motion to certify a class pursuant to

24   Rule 23.

25         Regarding the injunction, the Court finds that the balance of equities now tips in favor of

the State of Nevada, which has borne and must continue to bear the cost of the injunction on behalf of its citizens.  The likelihood of success on the merits is not strong, and the duration of this litigation is unknown; therefore, heeding its mandate to narrowly draw the least restrictive relief, the Court finds that the injunction is not in the public interest and should be dissolved.

### A.  The claim, the class and the proposed settlement

A claim under 42 U.S.C. § 2000cc-1 is provided for by RLUIPA, which allows that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person − (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Regarding the burden of proof, the statute provides:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(b).  The statute specifically provides that "[n]othing in this chapter shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act)." 42 U.S.C. § 2000cc-2(e).  As stated above, the PLRA requires that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The

1
2
3

        court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

4   18 U.S.C. § 3626(a)(2).

5        In order to succeed on this claim, Plaintiff must first produce prima facie evidence that

6   the common fare diet is a substantial burden on his exercise of religion.  If this burden is met,

7   then Defendants must bear the burden of showing that implementation of the common fare diet

8   is (1) in furtherance of a compelling governmental interest and (2) is the least restrictive means

9   of furthering that compelling governmental interest.  If Defendants make this showing, then the

10   Court must find that a resulting substantial burden on religious exercise is justified, and no

11   claim under RLUIPA may succeed.

12        Even if Plaintiff's claim succeeds, the relief accorded such a successful claim is not

13   likely to include monetary remedies, and is most likely to take the form of an injunctive

14   remedy.  At this stage of the litigation, the Court cannot conclude that Plaintiff will be able to

15   satisfy his prima facie burden.  Even if that burden can be met, the Court recognizes that

16   reducing costs at this time of nationwide and statewide financial stress is indeed a compelling

17   governmental interest, and that the primary issue to be determined by the Court is whether the

18   common fare diet is the least restrictive means of furthering that interest.  The Court recognizes

19   that a settlement could resolve Plaintiff's complaint more successfully than a full determination

20   of the merits of the case.  However, and as discussed below, the weight of each of the factors

21   the Court must consider in judging the fairness, reasonableness, and adequacy of the proposed

22   settlement is tipped against approval of the settlement, particularly considering the vocal

23   opposition from a significant percentage of the class as well as the lead Plaintiff himself.

24        Two days prior to the fairness hearing on October 11, 2012, Plaintiff submitted to the

25   Court a "Motion to be Heard" in proper person, citing his "Objection to the Proposed

1    Settlement Agreement" (ECF No. 182) and explaining that he had "grave concerns about Class

2    Counsel Jacob Hafter's unethical handling of this entire litigation," including class counsel's

3    statements to the media discounting class members' objections. (ECF No. 205.)  At the hearing,

4    the Court heard from Plaintiff, appearing by telephone, in which he reiterated his and other

5    class members' opinions, as filed in the docket that class counsel should "step down" from

6    representation of the class because of conflicts in representation. (Mins. of Proceedings, ECF

7    No. 206.)

8         As with previous hearings, the Court discussed with the parties the letters from class

9    members regarding the complaints about representation, and requests from class members to

10   sanction class counsel and to file complaints with the State Bar of Nevada for inadequate

11   representation. (*Id.*)  Plaintiff again indicated his desire to dismiss class counsel and to enlist

12   legal assistance from the Religious Liberty Clinic at Stanford Law School. (*Id.*)  In response,

13   class counsel described the difficulties his office has encountered in managing the action and

14   the dozens of inmates requesting correspondence relating to the case, and requested that he be

15   allowed to withdraw as counsel upon entry of the Court's order. (*Id.*)

16        Plaintiff's preference to terminate class counsel was again echoed in Plaintiff's

17   "Supplemental Motion to be Heard" sent by Plaintiff via United States Mail, and filed in the

18   docket on October 12, 2012. (ECF No. 209.)  In that letter, referring to the Religious Liberty

19   Clinic, Plaintiff states that "[a]s Class Representative, it is my hope and prayer this honorable

20   court rejects the Proposed Settlement Agreement and stays the proceedings for 90 days to allow

21   New Class Counsel time to review all documents." (*Id.*)  Although no attorney has formally

22   requested appointment as new class counsel, the Court remains troubled by the possibility that

23   the interests of the class were compromised by the extraneous conflicts of interest under which

24   class counsel appeared to be operating.  These conflicts are represented in email

25   correspondence submitted to the Court by one of the class members after the fairness hearing.

1    (Emails from Rabbi Menachem Katz to Kenneth Friedman, Exs. 1-4 to Friedman Objection,

2    ECF No. 217.)  With these conflicts in mind, it is difficult for the Court to confidently evaluate

3    the adequacy of class counsel's responses to the substantive objections of class members to the

4    proposed settlement.

5            Recently, the Ninth Circuit reversed a district court's approval of a class action

6    settlement, concluding that "the class representatives and class counsel did not adequately

7    represent the absent class members." *Radcliffe v. Driver*, No. 11-56376, slip op. at 12, 2013 WL

8    1715422, at *2, 2013 U.S. App. LEXIS 7932, at *8-9 (9th Cir. April 22, 2013) (considering the

9    question of "whether class representatives and class counsel are adequate where the settlement

10   agreement conditions payment of incentive awards on the class representatives' support for the

11   settlement").  In *Radcliffe*, the court found that "the class representatives and class counsel were

12   inadequate to represent the absent class members" where "class counsel engaged in conflicted

13   representation by continuing to represent the settling class representatives . . . and the class at

14   large after the two groups developed divergent interests." *Id*. at 12, 2013 WL 1715422, at *2,

15   2013 U.S. App. LEXIS 7932, at *9.

16           The court explained that "[c]onflicted representation provides an independent ground for

17   reversing the settlement and the awards of attorneys' fees and costs." *Id*. at 23, 2013 WL

18   1715422, at *7, 2013 U.S. App. LEXIS 7932, at *25.  In a footnote, the court explained their

19   "hold[ing] that settling class counsel ultimately represented parties that had a conflict of interest

20   and therefore class counsel could not adequately represent the class and are entitled to no fees

21   for their legal efforts during the conflicted representation," pointing out that "upon a resolution

22   of this case, the district court will have discretion to award fees for any non-conflicted

23   representation that created a benefit for the class." *Id*. at 24 n.6, 2013 WL 1715422, at *7 n.6,

24   2013 U.S. App. LEXIS 7932, at *25 n.6.

25           Here, the Court finds that the interests of class counsel, the named plaintiff, and the class

1  members clearly diverged at some point prior to the parties' presentation of the proposed

2  settlement agreement, to the point of outright hostility.  No class member has articulated

3  approval of the proposed settlement negotiated by class counsel.  This finding of a conflict on

4  the part of class counsel provides an independent ground for rejecting the proposed settlement.

5        With these facts, the Court must also re-evaluate the class certification.  As discussed

6  above, the Court has reason to question the vigor with which class counsel is compelled to

7  prosecute the action, and whether a conflict might exist that compromises the interests of the

8  class.  Also, earlier in the litigation, the question of lead Plaintiff's adequacy to represent the

9  class was raised, which implicates the commonality and typicality requirements of Rule 23

10  class certification.  Therefore, where the interests of the class members do not align with those

11  of the named plaintiff and with class counsel, the Court finds that the prerequisite of adequacy

12  pursuant to Rule 23(a)(4) is not met.  To properly determine the extent of this divergence, the

13  Court finds that the stipulated certification of the class must be discarded and that the issues

14  must be briefed.  Accordingly, the Court must reject the proposed settlement and also decertify

15  the class.  To the extent that class claims under RLUIPA are meritorious, the Court intends to

16  provide an opportunity for maintenance of such an action, and will therefore permit a renewed

17  motion to certify the class that fully addresses the requirements of Rule 23, with particular

18  attention to the adequacy of proposed class counsel and any proposed lead plaintiff.

19        **B.**   <u>**The injunction**</u>

20        As stated by the Court at the hearing on the motion for preliminary injunction on

21  February 10, 2012, Plaintiff cannot show a strong likelihood of success on the merits, but only

22  serious questions going to the merits. (Mins. of Proceedings, ECF No. 63.)  At the time, the

23  Court found that the balance of equities tipped sharply in favor of Plaintiff, and found cause to

24  grant the motion. (*Id*.)  Since that time, the strength of Plaintiff's cause of action has not

25  improved.

As discussed above, the Court continues to recognize that the likelihood of success on the merits is not strong.  What has changed since the original injunction order is that the balance of equities no longer tips sharply in favor of Plaintiff or any of the class.  Defendants, as representatives of the State of Nevada and its citizens, have borne the financial burden of delaying implementation of a cost-cutting menu, at a time when the state is experiencing budget emergencies.  Even though Plaintiff's claim presents serious questions going to the merits, the Court can no longer find that the interests of Plaintiff and the class significantly outweigh the costs and burden on Defendants and the citizens of Nevada in delaying implementation of the common fare menu.  The balance of equities no longer tips sharply in favor of lead Plaintiff or the class members.  Accordingly, grounds for an injunction no longer exist, and the Court must dissolve the injunction.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the parties' proposed class action Settlement Agreement (Ex. 1 to Order, Aug. 16, 2012, ECF No. 144) is **NOT APPROVED**.

**IT IS FURTHER ORDERED** that the injunction issued by the Court on February 10, 2012, and as amended on February 17, 2012 (ECF Nos. 64, 72) is **DISSOLVED**.

**IT IS FURTHER ORDERED** that the class certified by stipulation in the Court's Order of August 16, 2012 (ECF No. 144) is **DECERTIFIED**.  Any stay previously ordered by the Court is lifted.  The parties are directed to submit any requests to amend the scheduling order by May 31, 2013.

**IT IS FURTHER ORDERED** that the October 11, 2012, oral request of counsel Jacob Hafter to withdraw as counsel upon entry of this order is **DENIED**.  Any requests for a Court order regarding representation must be submitted to the Court in the form of a written motion, fully explaining the basis for any such requests.

**DATED** this 3rd day of May, 2013.

_____
Gloria M. Navarro
United States District Judge